```
                                            RECEIVED
         IN THE UNITED STATES DISTRICT COURT  USDC CLERK, CHARLESTON, SC
            FOR THE DISTRICT OF SOUTH CAROLINA
                                              2006 NOV 27  P 2: 24
James L. Fishburne,          )   C. A. No. 2:06-1226-RBH-RSC
                             )
           Plaintiff,        )
                             )
        -versus-             )   REPORT AND RECOMMENDATION
                             )
Jo Anne Barnhart, Commissioner)
of Social Security,          )
                             )
           Defendant.        )
```

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, James L. Fishburne, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an unsuccessful application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. In January 1989, and again in August, 1998, the plaintiff filed an applications for benefits, alleging an onset of disability of April 1, 1994, due to his neck, back, and high blood pressure. (Tr. 26). Plaintiff was not represented by counsel and he did not appeal the decisions.

On June 6, 2000, he protectively filed a second application for disability insurance benefits (Tr. 57-60), which was

initially denied on July 14, 2000. (Tr. 30). Plaintiff was again unrepresented and did not appeal that decision.

On February 22, 2002, the plaintiff protectively filed another application for disability insurance benefits, alleging an onset date of July 21, 1997, due migraine headaches, bilateral pes planus, hallux valgus, hypertension, and hemorrhoids. (Tr. 61-64). His third application was denied initially and upon reconsideration (Tr. 38-49), and he requested a hearing before an administrative law judge. (Tr. 50). The administrative law judge before whom the plaintiff appeared with counsel, considered the case de novo, and on February 6, 2004, found that the plaintiff was not disabled under a disability as defined in the Social Security Act, as amended. (Tr. 11-12). The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on May 8, 2004.

On September 13, 2004, the plaintiff filed an action in this court seeking judicial review of the administrative law judge's decision. In April 2004, the Commissioner moved the court to enter a judgment with an order of reversal with remand of the matter to the Commissioner for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). The plaintiff consented to the motion. On remand the Commissioner directed the administrative law judge "to evaluate the Veteran's Administration's 100 percent disability determination and state the weight assigned to it, to further consider the maximum

residual functional capacity and obtain vocational evidence." (Tr. 513-16). (C/A 2:04-22213-RBH-RSC). The motion was granted by order dated April 25, 2005. (Tr. 512).

On July 16, 2005, the Appeals Council remanded the case to the administrative law judge. On January 31, 2006, the administrative law judge held a de novo hearing at which the plaintiff appeared with counsel and Freal Jabron, a vocational expert. In his February 24, 2006, decision, the administrative law judge found that the plaintiff's last insured date was June 30, 1998, and that the plaintiff was not disabled within the meaning of the Act, at any time through his last dated insured. (Tr. 486). The administrative law judge's finding became the final decision of the Commissioner of Social Security. 20 C.F.R. § 404.984. The plaintiff filed this action on April 22, 2006, and oral argument before the undersigned was had on November 7, 2006.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 1998.
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision. (20 CFR 404.1520(b)).
>
> 3. Through the date last insured, the claimant had the following severe impairment: degenerative disc disease status post laminectomies and fusion with chronic pain.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a significant range of light work activity. Specifically, the claimant was able to lift up to 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8-hour day, and walk and stand for 4 hours in an 8-hour day, with a sit/stand option whereby the claimant was able to sit, stand, or walk for up to 1 hour at a time. However, the claimant was limited to no more than occasional climbing or stairs or ramps, balancing, stooping, kneeling, crouching, or crawling with no climbing or ropes, balancing, stooping, kneeling, crouching, or crawling with no climbing or ropes, scaffolds, or ladders and no exposure to hazards. Additionally, the claimant was limited to no more than frequent overhead reaching or feeling. (Sic).

6. Through the date last insured, the claimant was unable to perform any of his past relevant work (20 CFR 404.1565).

7. The claimant was born on December 25, 1951, and was 46 years old on the date last insured, which is defined as a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR5 404.1560(c) and 404.1566). (Sic).

11. The claimant was not under a "disability," as

4

>  defined in the Social Security Act, at any time through June 30, 1998, the date last insured (20 CFR 404.1520(g)).

Tr. 479-485.

## **APPLICABLE LAW AND REGULATIONS**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453,

5

1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short, the only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and whether proper legal standards have been applied.

### QUESTIONS PRESENTED

By brief and at oral argument, the plaintiff argued:

1. The ALJ reopened prior applications

2. The ALJ performed a flawed listing analysis; Listing 1.04A

3. The ALJ failed to meet the commissioner's burden at step five of the sequential evaluation process by not accepting the vocational expert's opinion that the plaintiff could perform no work when limitations imposed by pain were added to the residual function capacity found by the ALJ in the hypothetical question to the vocational expert.

**REOPENING PRIOR APPLICATIONS**

The Commissioner took the position that the administrative law judge did not reopen Plaintiff's prior application because the administrative law judge wrote, in the introductory portion of his order denying benefits, "Obviously, there is no new and material evidence sufficient to reopen the latest prior application." (Tr. 477). However, while purporting to deny reopening, the record makes clear that the administrative law judge actually reopened the record in full: he discussed all the evidence, the dates at issue in prior applications, and the new evidence proffered. The administrative law judge's findings are full and at least partially analytical. It is a did not a simple decision based upon res judicata. The administrative law judge considered all the issues of this and the prior application, essentially reopened the previous claim and ruled upon it. See, e.g., McGowen v. Harris, 666 F.2d 60 (4th Cir. 1991). Therefore, the decision of the Commissioner that the plaintiff was not disabled on his alleged onset date of July 21, 1997, or at any time prior to the expiration of his insured status on June 30, 1998, is a final decision and, as such, is reviewable here.

**LISTING ANALYSIS**

Plaintiff also argued that the administrative law judge did not properly consider whether Plaintiff met a Listing.

Disability may be determined with reference to a "Listing of Impairments" contained in regulations promulgated by the Commissioner. A claimant may be found disabled if his impairment or impairments have specific clinical findings that are the same

7

as those for any listed impairment or are medically equivalent to those for any listed impairment.

When the evidence in the administrative record clearly generates an issue as to a particular listing, as here, and the administrative law judge fails properly to explain clearly the medical evidence of record supporting the conclusion reached at that critical stage of the analysis, the court cannot determine whether there was substantial evidence to support the administrative law judge's Step Three conclusion. Schoofield v. Barnhart, 20 F.Supp. 2d 512 (D.Md. 2002).

The Listing at issue in the instant case is Listing 1.04A, disorders of the spine, which requires the following: Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. pt. 404, Subpt. P., App. 1, § 1.04A.

The administrative law judge's complete analysis of whether the plaintiff met or equaled Listing 1.04A is as follows:

> While the claimant's attorney has argued that the claimant's degenerative disc disease meets the requirements of Listing 1.04A such a finding cannot be made prior the expiration of the claimant's insured status on June 30, 1998. Of note, the attorney relies on many medical treatment notes and examinations which occurred prior to the claimant's alleged onset date. Even considering these medical records, there is no objective medical evidence to document evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

8

>associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. Specifically, medical evidence from the VA Medical Center fails to document any motor loss or muscle weakness for the period beginning on claimant's alleged onset date through his date last insured.

(Tr. 480).

A reading of this rationalization makes clear that the administrative law judge simply did not properly analyze whether Plaintiff's spinal disorder met the relevant listing, nor did he fully analyze whether the combined effect of Plaintiff's multiple impairments medically equaled a listing. Instead, the administrative law judge merely parroted the aforementioned criteria of Listing 1.04A and, without further discussion, wrongly stated that there was no objective evidence documenting that Plaintiff's impairment met the criteria. The administrative law judge's failure prevents the court from finding that substantial evidence supports the Step 3 determination. Schoofield v. Barnhart, 20 F. Supp. 2d 512 (D. Md. 2002).

In fact, a review of the record reveals there is a plethora of objective evidence relative, if not during, the insured period which should have been considered. For example, the medical record contains objective findings, including five CT myelograms over a period of several years (Tr. 139, 121-22, 188, 156, 206). The first study showed seventh and eight cervical nerve root impingement; abnormal flattening of the spinal cord suggestive of spinal cord atrophy; disc herniation and neural foraminal narrowing; and disc bulging with impingement on the thecal sac. The second study noted the wasting appearance of the thecal sac;

9

impingement of the fifth nerve root sheath bilaterally; and facet joint osteoarthritis. The third study noted marked spinal cord compression; spinal stenosis; and soft tissue density compatible with tumor, disc material, or scar, while the fourth study showed obliteration of the fat plane of the right nerve root; spinal stenosis; flattened thecal sac; nerve root impingement; nerve root sheath filling defect; and bony fragments and osteophyte at multiple levels. A fifth study revealed marked spinal stenosis with tortuosity of nerve roots; marked impingement of the thecal sac; ventral impingement; facet joint osteoarthritis; suspicion of bony encroachment upon the C8 nerve root; marked spinal stenosis at L3-4 and marked impingement of the thecal sac.

Additionally, examinations reported 1) decreased Achilles reflexes bilaterally; 2) right anterior tibialis weakness; 3) right extensor hallucis longus tendon weakness; and 4) decreased pin prick and light touch sensation. (Tr. 145). Another examination revealed 1) decreased right knee reflex; 2) give-away weakness in the right quadriceps (Tr. 190-191); positive straight leg raise at 45 degrees on the left and 1/4 inch atrophy to right calf. (Tr. 215). In other examinations physicians documented chronic lumbar back pain and numbness over the lateral calf (Tr. 135, 137); symptoms of right lower extremity radicular pain consistent with L5 radiculopathy (Tr. 144); right leg radicular pain (Tr. 147); pain to right leg, low back, shoulders, and neck (Tr. 160); chronic radicular pain (Tr. 193); and chronic neck and leg pain. (Tr. 227).

This record demonstrates "ample factual support" for Listing 1.04A which required the administrative law judge to perform a proper Listing analysis, which analysis he did not do. The Step 3 finding is not supported by substantial evidence and should be reversed.

## VOCATIONAL EXPERT

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).

The purpose of bringing in a vocational expert is to assist the administrative law judge in determining whether there is work available in the national economy which this particular plaintiff can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, Chester v. Mathews, 403 F.Supp. 110 (D. Md.1975), and it must be in response to proper hypothetical questions which fairly set out all of plaintiff's impairments. Stephens v. Secretary of Health, Education and Welfare, 603 F.2d 36 (8th Cir. 1979).

Here, the administrative law judge posed two hypothetical questions to the vocational expert. (Tr. 508-509). They are as follow:

> This hypothetical individual retains the capacity to of lifting 20 pounds on occasion, 10 pounds on a frequent basis, can stand four of eight hours, walk four of eight hours, and sit six of eight hours. This individual would need a sit/stand option of one hour at a time. Ropes, ladders, scaffolds and hazards would be never. Climbing, balancing, stooping, kneeling, crouching and crawling would be occasional. Overhead reaching and feeling would be frequent (TR 508). Hypothetical number two is the same as hypothetical number one. The only modification is that as a result of pain, this individual would miss various times. This would be in the sole discretion of this hypothetical individual. It could occur once a day. It could be, for example, five minutes one day. It could be multiple hours another day. Would that affect your answer?

(Tr. 509-510).

While the vocational expert testified that jobs were available which the plaintiff could perform based on the first hypothetical, when the hypothetical added the plaintiff's need to rest because of his pain, all jobs were eliminated. The administrative law judge relied upon the vocational expert's findings as to his first hypothetical, which was incomplete because it did not include allowances for plaintiff's well-documented pain.

Plaintiff's record demonstrates objective medical evidence of conditions which could reasonably cause the pain of which he complained, including multiple back surgeries. Plaintiff has had regular medical treatment for his impairments for years and physicians have consistently prescribed narcotic pain medication

including Oxycontin (Tr. 229), Darvocet (Tr. 229), and Percocet (Tr. 225). To eliminate restrictions resulting from pain from the hypothetical question deprived the answer of validity.

The administrative law judge simply picked and chose medical evidence based upon what best suited his review at the time. He indicated in his order that he would not consider evidence except that generated during the alleged onset date of July 21, 1997, through the expiration of the insured status on June 30, 1998, and then considered evidence of plaintiff's pain as recent as September 2002, (Tr. 480), and as remote as 1995. (Tr. 482). The administrative law judge did not discharge his duty to do a full and proper pain analysis and then to include the restrictions caused by pain in the hypothetical question to the vocational expert.

In short, on this record it cannot be said that the administrative law judge's decision denying benefits is supported by substantial evidence, and, therefore cannot be affirmed.

### REMAND OR AWARD BENEFITS

Whether or not to remand or reverse is generally approached on a practical level. Certainly an award of benefits is more appropriate when further proceedings would not serve any useful purpose, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1985). Likewise an award of benefits is appropriate when substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose, or a substantial amount of time has already been

13

consumed. Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984); Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir. 1982). Also reversal is appropriate when the Secretary has had an opportunity to develop the record on an outcome-determinative issue and has failed to produce substantial evidence, Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983), Tennant, 682 F.2d at 710-711; or where "there is not the slightest uncertainty as to the outcome" and the remand "would be an idle and useless formality." NLRB v. Wyman-Gordon Company, 394 U.S. 759, 766 n. 6 (1969); Barry v. Bowen, 862 F.2d 869, 1988 WL 124873(4th Cir. 1988). On the other hand, remand is appropriate "where additional administrative proceedings could remedy defects. . .". Rodriquez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

It appears that Plaintiff first applied for benefits in January 1989, again in August 1998, and again in July 2000. He was not represented by counsel in these applications. In the last application of March 12, 2002, the denial was reversed by this court and remanded so that the administrative law judge could cure errors, including the lack of a vocational expert's opinion, and reevaluate the claim. On remand, the administrative law judge failed to perform a proper Listings analysis, a proper pain analysis, and did obtain vocational expert testimony but then relied on an incomplete hypothetical question to support his decision that the plaintiff was not disabled. The Commissioner had the case on remand until February 24, 2006. At this juncture, the plaintiff has been seeking benefits for over nine years. It appears that a remand would only delay the receipt of

14

benefits while serving no useful purpose, and a substantial amount of time has already been consumed. It therefore appears that benefits should be awarded outright.

## CONCLUSION

Accordingly, for the aforementioned reasons and pursuant to the power of this court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), and the case be remanded to the Commissioner to take appropriate action regarding award of benefits to the plaintiff based on a disability commencing July 21, 1997. See Melkonyan v. Sullivan, 111 S.Ct. 2157 (1991). The clerk of the court should enter a separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina,
November **27**, 2006